360 So.2d 216 (1978)
DIXIE ELECTRIC MEMBERSHIP CORPORATION
v.
Glenn JONES.
No. 12010.
Court of Appeal of Louisiana, First Circuit.
June 12, 1978.
*217 Michael E. Ponder, Baton Rouge, for plaintiff.
Allen B. Pierson, Jr., Pierson & Drake, Ponchatoula, for defendant.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
COVINGTON, Judge.
This suit originally came before the trial court on a petition for injunctive relief filed by Dixie Electric Membership Corporation (Dixie), seeking to restrain Glenn Jones from interfering with Dixie's relocation of an electric transmission line across Jones's property, so that the line would go around Jones's house instead of in close proximity thereto. The petition in the injunction suit described certain property across which Dixie claimed a right-of-way. The basis for this claim came about when, in 1939, Dixie, in order to provide electric service to the Bear Island Community, secured certain rights-of-way from the property owners abutting "Road 160".
The record reflects that two judgments were signed by two different judges of the district court. One judgment was signed on December 3, 1973, and the second on January 25, 1974; each granted Dixie the injunctive relief sought. The judgments essentially restrained Jones from interfering with the relocation of the transmission line. Thereafter, Dixie acted to relocate the line by setting an additional pole to enable the line to go around the Jones house in a "dog-leg" fashion, so as to alleviate a potentially dangerous condition.
In April of 1974, Glenn Jones, through his present counsel, filed an answer and a petition for damages, and also demanded removal of any transmission lines across his property. Jones contended that the property described in the right-of-way instrument, as well as in the original petition and the judgments, was not the correct description of his property across which Dixie had placed the transmission line.
To these pleadings Dixie filed certain exceptions and a motion for summary judgment. Dixie then agreed to a restraining order preventing any further activity on the Jones property until such time as the matter could be resolved by the trial court. Subsequently, the trial judge overruled the exceptions and denied the motion for summary judgment.
In due course, the matter came on for trial on the merits. The trial judge, being of the opinion that Dixie had obtained a valid right-of-way across the property of the appellant by virtue of the right-of-way instrument executed by J.D. Jones, a predecessor in title, on May 4, 1939, of record in Conveyance Book 56, page 101, of the records of Livingston Parish, covering approximately eight acres of land, rendered judgment recognizing the validity of said grant. He also recognized Dixie's right to relocate the transmission lines on said property.
The court dissolved all injunctions issued previously in favor of either party, and dismissed Jones's claim for damages and his action to remove the line from his property. Jones has appealed. We affirm.
Dixie Electric Membership Corporation obtained a right-of-way servitude, or easement, over approximately eight acres of land in 1939, then owned by J.D. Jones, described as:
"A certain tract or parcel of land containing approximately 8 (eight) acres in the 5 (fifth) Ward of the Parish of Livingston, on the 160 Road, purchased by the undersigned from B.B. Cleney-Jones and bounded on the north by Road 160, south by L. Picou, east by Bear Is. (Island) Road and west by Farm Rd. ¼ (one-quarter) Sec." (Filed and recorded on February 9, 1940, in COB 56, p. 101).
*218 At about the same time, Dixie acquired a right-of-way over a twenty-one acre tract from J.G. Jones; this was recorded in Conveyance Book 56 at page 102, on the same date as the one from J.D. Jones.[1]
Although J.D. Jones, the father of Glenn Jones, denied signing the 8-acre right-of-way instrument, the trial judge accepted it as valid and as the pertinent servitude. Applicable to this situation is the Ancient Document Act, LSA-R.S. 13:3727, which in part states:
"In every instance where the conveyance records in the office of the clerk of court. . . show that any deed, conveyance. . ., or other written act . . . shall have been recorded in the records for a period of not less than twenty-two years, it shall be presumed that the original instrument of which the record purports to be a copy bore the genuine signature of the maker . . . (and) . . . shall be received and admitted in evidence. . . without proof of signature. . . and shall be deemed prima facie proof of the contents . . . ."
Our Supreme Court in Osborn v. Johnston, 322 So.2d 112 (La.1975), interpreted the Ancient Document Act as follows:
"Our statute does not require that the ancient instrument be `regular' or `unsuspicious'. The combination of age and recordation not only authenticates the old document . . . but . . . by the terms of the act, established `a prima facie presumption of the execution and of the genuineness of such instrument'."
(Citing Watkins v. Zeigler, 147 So.2d 435, La.App. 2 Cir. 1965).
The Supreme Court also pointed out that the burden of proof under the statute is on the party questioning the ancient instrument to overcome the presumption of its prima facie validity. This defendant has not borne that burden. In any event, the testimony in the record, when read in its entirety, is not so persuasive as to overcome the presumption created by LSA-R.S. 13:3727.
A conventional servitude established by title is governed principally by the intention of the parties. Article 709 of the Louisiana Civil Code provides that owners of land may establish "such servitudes as they deem proper." The article also provides that the use and extent of the servitude are regulated by the title by which they were granted. We find that the trial court did not abuse its discretion in finding that the transmission line was originally located in accordance with the right-of-way granted.
The record reflects that the transmission line was constructed in the 1940's and the Jones house was not constructed until the early 1960's. All parties agree that in 1969 the transmission line extended over a portion of the Jones residence. Hence, we can only conclude that the house was constructed under the transmission line. We believe that, pursuant to LSA-C.C. art. 777, it was proper for the line to be relocated so that the Jones house was no longer beneath the transmission line; a potentially dangerous condition was thus alleviated. We further find that the relocating of the line by setting an additional pole to enable the line to go around the Jones house in a "dog-leg" fashion was reasonable under the circumstances.
In view of the fact that we have agreed with the trial court in finding that Dixie held a conventional servitude on the subject property, as discussed above, it is not necessary for us to rule upon the question of a prescriptive right-of-way having been acquired by Dixie across the Jones property.
The finding of a conventional servitude also makes it unnecessary for us to discuss the effects of the cases of Joseph A. Neyrey, General Contractor, Inc. v. Louisiana Power & Light Company, 347 So.2d 266 (La.App. 4 Cir. 1977), and of Lake, Inc. v. Louisiana Power & Light Company, 330 *219 So.2d 914 (La.1976), cited by appellant. In neither case was a conventional servitude involved.
For the foregoing reasons, we affirm the judgment at appellant's costs.
AFFIRMED.
NOTES
[1] Unfortunately, in the instant case there was some confusion, even in Dixie's mind, as to which of the two servitudes covered the subject property. It is appellant's position that neither of them covers it.