EDWARDS, Judge.
J. Randolph Ogden brought suit against Walter R. Bankston and Alice Folkes Bank-ston seeking preliminary and permanent injunctions to prevent defendants from interfering with plaintiff’s servitude across defendants’ property. Ogden also sought damages. Defendants reconvened seeking a declaratory judgment that the servitude could be relocated in a manner suggested by defendants.
Following the granting of a preliminary injunction in plaintiff’s favor, hearings *1356 were conducted and the matter was taken under advisement. On October 15, 1979, judgment was signed by the trial court. A permanent injunction issued enjoining defendants from interfering with or relocating plaintiff’s servitude. Plaintiff’s claim for damages and defendants’ reconventional demand were dismissed. All costs were assessed against the defendants who have appealed. We affirm.
Appellants specify no errors. We presume that the “ISSUES” in their brief amount to specifications of error. Those issues are:
1. Is Ogden bound by the language contained in the acquisition of his estate from Homer Knost?
2. May the Bankstons relocate the servitude as provided by LSA-C.C. Art. 748?
Ogden owns about thirty-five acres of land bordered on the east by the Amite River and on the west by defendants’ property. Plaintiff has a servitude of passage thirty feet wide and one mile long which runs along the southernmost border of defendants’ property and opens onto Green-well Springs Road. The servitude forms plaintiff’s driveway.
Defendants wish to subdivide and develop their property. They seek to shorten plaintiff’s servitude by turning it north and connecting it with one of the public streets shown on their proposed plat.
Plaintiff urges that to relocate his servitude would destroy a beautiful gravel drive, lined by trees and terminating both ends at elegant gateways. He maintains that the servitude as presently constituted emphasizes the rural aspect of his property.
Defendants stress that because of flood problems with the Amite River and required building elevations, the servitude must relocate if defendants are to maximize the use of and consequent profit from their property.
When Ogden purchased his estate from Homer Knost in 1972, the act of sale described Knost’s property as having been purchased in two separate acts. One act described certain lands, now part of Ogden’s estate, as enjoying a perpetual servitude. The second act described certain other lands, also now part of Ogden’s estate, as enjoying a servitude subject to relocation by the owner of the servient estate or his transferees. Since the servitude mentioned in both acts is the same as the one at issue, it is clear that defendants may not relocate it on the basis of contract. Defendants may not superimpose relocation rights over property sold not subject to a right of relocation.
Thus, while Ogden is bound by the language contained in the act of sale from Homer Knost, such language clearly shows that certain of Ogden’s lands were purchased together with a perpetual servitude not subject to contractual relocation.
Without a contractual right to relocate, appellants must rely on LSA-C.C. Art. 748[1] which provides:
“The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally con *1357 venient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate.”
A careful review of the entire record does not support a finding that the continued existence of the servitude in its present location is burdensome.
Robert L. Breaux, a land surveyor and witness for the defendants, testified that the servitude as is decreases the depth of eight or nine proposed lots; that innumerable other plans for development were possible; and that defendants believed their proposed plan, which would result in greatly shortening and relocating plaintiff’s servitude, “was the most economical and advantageous way to use the land.”
Robert L. Bennett, a civil engineer called by the plaintiff, testified that he had laid out more than thirty subdivisions in his career; that alternative plans were feasible in this case (he presented one, P-30); and that in any case, the subdivision plans could easily be shifted thirty feet north of the proposed location, a shift which would minimize problems for the defendants and maintain the servitude in its present location.
We find that the only reason the defendants contend the present servitude location is burdensome is that the profit margin would be higher if the servitude were relocated and certain proposed lots, which would otherwise have suffered the servitude to pass across their rear, would enjoy a greater depth.
None of the relocations suggested by defendants would be equally convenient for Ogden. That plaintiff prefers driving one mile on a gravel road between trees and past rustic gates rather than through a modern subdivision is obvious and understandable. Plaintiff purchased his estate prior to defendants. When defendants bought their property, they were aware of Ogden’s servitude. Consequently they must live with it.
Defendants have not been prevented from making useful improvements. They may develop their property in almost any manner. They simply are not allowed to maximize their profits at the inconvenience of plaintiff.
For the foregoing reasons, the trial court judgment is affirmed. All costs of these proceedings, both trial and appellate, are to be paid by Walter R. Bankston and Alice Folkes Bankston.
AFFIRMED.

. Art. 748, effective January 1, 1978, is based on former Art. 777, which provided:
“The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it.”