398 So.2d 1037 (1981)
J. Randolph OGDEN
v.
Walter R. BANKSTON and Alice Folkes Bankston.
No. 80-C-2281.
Supreme Court of Louisiana.
May 18, 1981.
*1039 Curtis K. Stafford, Jr., Baton Rouge, for defendants-applicants.
Gerard E. Kiefer, of Forrest, Kiefer, Bacot & Moore, Baton Rouge, for plaintiff-respondent.
DIXON, Chief Justice.
Plaintiff is the owner of an enclosed estate bordering on the Amite River. His estate enjoys a servitude of passage to Greenwell Springs Road over land now owned by defendants, Walter R. Bankston and Alice Folkes Bankston. Defendant Walker R. Bankston, a land developer who desires to subdivide and market his property as a residential neighborhood, contends that the present location of the servitude of passage interferes with his plans to develop and sell the property. The issue before us is whether defendant has a right to relocate the servitude.
Plaintiff petitioned the district court to enjoin the defendant from disturbing his right of passage. Defendant, in his answer and reconventional demand, sought a declaratory judgment to establish his right to have the servitude moved to a different location.
After trial on the merits, the district court granted a permanent injunction, forbidding any further interference with the servitude. The reconventional demand for a declaratory judgment was dismissed on the grounds that defendant failed to prove that the present site of the right of passage had become burdensome.
The Court of Appeal affirmed the decision of the trial court. Odgen v. Bankston, 387 So.2d 1355 (La.App. 1st Cir. 1980). The court held that defendant did not have a contractual right to relocate the servitude, and that the legal right of relocation under the provisions of the Civil Code could not be claimed, since the record did not establish that the continued existence of the servitude in its present location had become burdensome. Defendant seeks review.

I
The record discloses that the actual roadway has been in existence at least since 1922; it is described as a rustic, tree lined avenue, and is almost a mile in length. Throughout these proceedings, defendant has assumed that the servitude itself was created in 1963, when one of plaintiff's ancestors in title, Margaretta L. Meares, sold a 5.33 acre tract to James B. Ott. Included in this sale was a "perpetual servitude" at the rear of part of the tract, and the servitude of passage to Greenwell Springs Road. In regard to the latter, the act of sale recites the following:
"A servitude of passage for the use and benefit of the above described property, 30 feet wide from the aforesaid property to the Greenwell Springs Road along and adjacent to the South line of the Vaughn Tract owned by vendor. The vendor, however, reserves the right to relocate this servitude of passage at any other location within the Vaughn Tract, provided, however, that if such servitude is relocated, the property herein shall be provided with either a private or a public means of access from the property herein sold to the Greenwell Springs Road, in a condition equal to or better than the condition of any roadway existing on such servitude of passage at the time of such relocation. Nothing herein contained shall obligate the vendor to maintain the aforesaid servitude of passage. This servitude is shown as a private servitude on the map attached hereto."
*1040 By this language, Mrs. Meares attempted to reserve the right to relocate the servitude, contingent only upon the obligation to provide an alternate right of passage to the public road "in a condition equal to or better than" the existing corridor. So long as she could provide an alternate passageway, Mrs. Meares was not required to justify or explain her decision to relocate the servitude. As will be shown, this contractual right of relocation was somewhat broader than the privilege of relocation afforded by the law.
It is the defendant's contention that the benefit conferred by the proviso in the act of sale from Mrs. Meares to James B. Ott is applicable in this case. However, defendant fails to note that this very same servitude was described in a prior act of conveyance. In 1923 Charles C. Bird sold a small parcel of land to Clive W. Kernan. The act of sale recites that the consideration for the purchase was $25.00 in cash:
"... and the additional consideration of a perpetual servitude of way and passage herein granted by the said Clive Wetherill Kernan to the vendor over and along a certain strip of land thirty (30) feet in width acquired by Clive Wetherill Kernan from Mrs. Elizabeth V. Redden, and indicated on the sketch made by A. G. Mundinger... said strip of land having a front of thirty (30) feet on the Greenwell Springs Road and extending along the southern boundary of the strips of land owned by Clive Wetherill Kernan ..."
The plat attached to this conveyance clearly shows that the servitude described above is over the same ground as the servitude mentioned in Mrs. Meares' act of sale to Ott.[1] An act of correction was filed by Clive W. Kernan in 1931, which modified the servitude so that it conformed with the actual location of the roadbed. (According to this act, the roadbed meandered from the lines established for the servitude in the first 500 feet east of Greenwell Springs Road). The parcel of land to which this servitude was due was never part of defendant's chain of title; it passed instead to plaintiff's vendor, while title to the servient estate passed to defendant's vendor.
At all times relevant to this litigation, the provisions of the Civil Code of 1870 were in effect.[2] The code provides that servitudes may arise "from the natural situation of the places, from the obligations imposed by law, or from contract between respective owners." C.C. 659 [C.C. 654 (Supp.1977)]. The term "contract" is understood to include "all acts by which property can be transferred ..." C.C. 743 [C.C. 722 (Supp.1977)]. In the present case, the servitude of passage to Greenwell Springs Road was established in 1923 in an act of sale conveying property to Clive W. Kernan. When servitudes are created by convention between property owners, their use and extent "are regulated by the title by which they are granted ..." C.C. 709 [C.C. 697 (Supp.1977)]. This principle is amplified in C.C. 722, which defines the servitude of passage:
"The right of passage, or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horseback, or in a vehicle, to drive beasts of burden or carts through the estate of another.
When this servitude results from the law, the exercise of it is confined to the wants of the person who has it.
When it is the result of a contract, its extent and the mode of using it is regulated by the contract."
This court must give effect to the terms by which such servitudes are established: *1041 property owners have the right to establish whatever servitudes they deem proper, "... their power in that respect being limited only by considerations of public order ..." Bernos v. Canepa, 114 La. 517, 520, 38 So. 438, 440 (1905).
In general, a servitude must be imposed upon an "estate" or in favor of an "estate;" the service is not to be imposed "on the person or in favor of the person." C.C. 709 [C.C. 646 (Supp.1977)]. A servitude established in favor of immovable property is "predial," a real right that is inseparable from the property to which it is attached. C.C. 653-54 [C.C. 650 (Supp. 1977)]. Although the language creating the servitude in the 1923 act of sale recites that the passageway was granted "to the vendor," it is evident that the right of passage was a real benefit to the estate itself. For this reason, the servitude must be construed as a real right, not one which was personal to the grantee:
"If the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled.
C.C. 756 [C.C. 733 (Supp.1977)].
See also C.C. 754-55; Burgas v. Stoutz, 174 La. 586, 141 So. 67 (1932); Coguenhem v. Trosclair, 137 La. 985, 69 So. 800 (1915). This conclusion is bolstered by the language in the 1931 act of correction, filed by Clive W. Kernan, in which it was said that the right of way and passage was "actually laid out for the benefit of the property" of the grantee, Charles C. Bird. A real advantage was secured for the dominant estate because, without the servitude of passage, it would have been enclosed by lands belonging to others, thereby diminishing its value and impairing its utility. The benefit conferred by the establishment of the servitude was not merely personal to the grantee, but was of demonstrable value to subsequent owners of the tract. For these reasons, the servitude must be deemed predial in nature, governed by the contract which established it. C.C. 757 [C.C. 734 (Supp.1977)]. See also C.C. 648 [C.C. 646 (Supp.1977)]; Plaisance v. Gros, 378 So.2d 178 (La.App. 1st Cir. 1979); McLure v. Alexandria Golf & Country Club, Inc., 344 So.2d 1080 (La.App. 3d Cir. 1977).
The Court of Appeal was correct in determining that, once a predial servitude is established by contract, the owner of the servient estate "may not superimpose relocation rights over property sold not subject to a right of relocation." 387 So.2d at 1356. The fact that Mrs. Meares acquired ownership of the servient estate did not give her an accompanying right to alter the terms of the initial grant of the servitude:
"Servitudes being essentially due from one estate to another for the advantage of the latter, they remain the same as long as no change takes place in regard to the two estates, whatever change may take place in the owners." C.C. 653 [C.C. 650 (Supp.1977)].
The original servitude was established in favor of an estate which did not form part of defendant's chain of title. As owner of the servient estate, Mrs. Meares was without the right to alter the servitude granted to the original dominant estate:
"He whose estate is incumbered with a servitude, may impose on it other servitudes of any kind, provided they do not affect the rights of him who has acquired the first." C.C. 749 [C.C. 720 (Supp. 1977)].
From the records, it is evident that two servitudes of passage exist over the same roadbed: the one created in 1923 by Mr. Kernan, and the one established in 1963 by Mrs. Meares. And, while Mrs. Meares' right of relocation was effective as to the vendee of the 5.33 acre tract, it was entirely void as to the owner of the original dominant estate. It is thus unnecessary to consider the argument that defendant is entitled to a contractual right of relocation: Mrs. Meares could not exercise any greater rights than could her ancestor in title, Mr. Kernan. C.C. 2015. Since Mr. Kernan did not reserve a right of relocation when he established a servitude in favor of the estate owned by Mr. Bird, Mrs. Meares was *1042 without authority to impose one. More to the point, her vendee was without the power to grant such a concession, since he did not own the previously established dominant estate.
It is also true that, when plaintiff purchased his property, the act of sale included the following language, virtually identical to that which is in the act of sale from Mrs. Meares to James B. Ott:
"Also a servitude of passage for the use of and benefit of the above described property, 30 feet wide from the aforesaid property to the Greenwell Springs Road along and adjacent to the South line of the Vaughn Tract owned by Margaretta L. Meares. Mrs. Meares, however, reserves the right to relocate this servitude of passage in any other location within the Vaughn Tract, providing however, that if such servitude is relocated, the property herein shall be provided with either a private or public means of access from the property herein to the Greenwell Springs Road, in a condition equal to or better than the condition of any roadway resting on such servitude or passage at the time of such relocation. Nothing herein contained shall obligate Mrs. Meares to maintain the aforesaid servitude of passage. This servitude is shown as a private servitude on the map made by Toxie Craft, Civil Engineer, hereinabove referred."
This language was not effective in reviving a right of relocation. As noted, Mrs. Meares' attempt to reserve the right of relocation was void ab initio, insofar as the reservation of that right affected the opposing rights of the owner of the first dominant estate. Mrs. Meares did not own the servitude, to do with it as she pleased: she owed it, and could not affect the rights inhering in the previously established dominant estate.
Even though the language embodying the right of relocation was carried over into the act by which plaintiff acquired title, plaintiff's ownership of the original dominant estate entitled him to enjoy the servitude without being subject to a contractual right of relocation. When the initial establishment of a servitude does not, by its terms, reserve any special rights in favor of the servient estate, such rights cannot be recreated and superimposed over the terms of the original contract without the assent of the owner of the dominant estate. Under the terms of the act through which plaintiff acquired title to the 5.33 acre tract, plaintiff did not grant a right of relocation as to the prior servitude owed to the dominant estate; rather, he merely accepted title to property that enjoyed a second servitude which was subject to a right of relocation. Since Mrs. Meares did not extract the concession of relocation from the owner of the original dominant estate, the notion that she had an absolute right of relocation was unfounded. The fact that plaintiff ultimately became the owner of both estatesthe 5.33 acre tract and the dominant estate originally owned by Mr. Birdis important only insofar as it gave him the accompanying authority to allow an impairment of his real right. The titles, however, show that this was not done. Plaintiff is entitled to enjoy the servitude of passage created in 1923 and modified in 1931, even though he also acquired the servitude established by Mrs. Meares in 1963. Because the agreement creating the former servitude did not reserve a contractual right of relocation, the terms of the suppletive law must be considered.

II
When a servitude is established by convention, C.C. 777 [C.C. 748 (Supp.1977)][3] governs the right of relocation. Discon v. *1043 Saray, Inc., 262 La. 997, 265 So.2d 765 (1972). C.C. 777 provides:
"The owner of the estate which owes the servitude can do nothing tending to diminish its use, or to make it more inconvenient.
Thus he can not change the condition of the premises, nor transfer the exercise of the servitude to a place different from that on which it was assigned in the first instance.
Yet if this primitive assignment has become more burdensome to the owner of the estate which owes the servitude, or if he is thereby prevented from making advantageous repairs on his estate, he may offer to the owner of the other estate a place equally convenient for the exercise of his rights, and the owner of the estate to which the servitude is due can not refuse it."
C.C. 777 establishes the general principle that the owner of a servient estate can do nothing to diminish the use or convenience of the servitude. The record indicates that the consummation of defendant's plans will substantially destroy plaintiff's present servitude of passage, and subject plaintiff to the inconvenience of using an alternate passageway through a residential neighborhood to reach him home. Nevertheless, C.C. 777 affords a right of relocation if the owner of the servient estate can prove that (1) the servitude has become "more burdensome" to the servient estate since the "primitive assignment," or (2) the servitude prevents the construction of "advantageous repairs." The law confers this right upon owners of servient estates essentially because predial servitudes are "restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law." Parish v. Municipality No. 2, 8 La.Ann. 145, 147 (1853).
Opposed to this consideration is the fact that the servitude itself was a bargained for convenience, established by contract between the respective owners of the dominant and servient estates. As noted, the general principle established in the law is that the owner of a servient estate can do nothing to diminish the use or convenience of the servitude. The jurisprudence is replete with decisions upholding this principle. See, e. g., Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972); Hymel v. St. John the Baptist Parish School Board, 303 So.2d 588 (La.App. 4th Cir. 1974); Kaffie v. Pioneer Bank & Trust Co., 184 So.2d 595 (La.App. 2d Cir. 1965). These decisions sanctioned the continued use of servitudes even where the restoration of such use imposed a financial burden upon the owners of the servient estates.
In denying defendant's petition for relief, the trial judge concluded that defendant had failed to prove that the servitude was any more burdensome now than it was originally, and that defendant likewise failed to show how the servitude "prevented" the making of useful improvements. The Court of Appeal affirmed this conclusion on the basis that the only showing that was made was that the present location of the servitude impeded defendant from increasing his profits on the sale of the land. Because neither court found that defendant was entitled to relocate the servitude, the question of whether defendant could provide plaintiff with "a place equally convenient for the exercise of his rights" did not need to be addressed. In his written reasons for judgment, however, the trial judge commented that he would not approve the relocation plan proposed by defendant, which would require plaintiff to drive on public streets through a subdivision to reach his property.
Few cases have analyzed the right of relocation under C.C. 777, and those which have are proof of Planiol's observation that "the weighing of the reasons for the displacement is a matter of judicial discretion." 1 M. Planiol, Civil Law Treatise § 2971 (LSLI trans., 1959). See, e. g., Dixie Electric Membership Corp. v. Jones, 360 So.2d 216 (La.App. 1st Cir. 1978); DeFelice Land Corp. v. Citrus Lands of Louisiana, Inc., 330 So.2d 631 (La.App. 4th Cir. 1976); Nelson v. Warren, 157 So.2d 762 (La.App. 2d Cir. 1963); Efner v. Ketteringham, 41 So.2d 130 (La.App. 2d Cir. 1949). Nevertheless, *1044 the exercise of discretion must be tempered by the words of the positive law.
It should be remembered that defendant's sole object in developing his rural property is to market it as a suburb. As the trial judge noted, the present location of the roadway might to some extent hinder or impede the laying out of lots in the proposed subdivision, but it does not "prevent" it. Plaintiff introduced evidence showing that the subdivision could be designed in another manner that would not be greatly affected by the presence of the roadway. Moreover, it does not appear that the development of a tract of land for sale as a residential neighborhood constitutes "advantageous repairs" as contemplated by C.C. 777. Defendant's estate is not being repaired or improved, but is being subdivided and sold. This development is of no intrinsic value to the servient estate, however advantageous it might be to defendant personally.
The critical question in this case is whether it has been satisfactorily shown that the present site of the servitude "has become more burdensome" to the present owner of the servient estate, defendant. In making this evaluation, "regard must be had to the circumstances of the country and its wants." Parish v. Municipality No. 2, supra, at 148. According to the testimony, the one distinct disadvantage of the present location of the roadway is that it prevents some ten lots in the proposed subdivision from having a full depth of about 150 feet. Defendant himself acknowledged that the servitude could be maintained in its present location without causing any substantial interference with the planned subdivision, except for the first 1000 feet or so of the roadway as it leaves Greenwell Springs Road. (On the plat, this portion includes the area between Greenwell Springs Road and the proposed Wascom Lane). Defendant stated that the servitude would not significantly affect the other lots in the subdivision, since their depth was already in excess of 150 feet. Defendant, accepted by the trial court as an expert real estate appraiser, testified that the location of the servitude in the described area presented a problem because prospective purchasers of rural lots generally prefer to have lots that are at least 150 feet deep. Permitting the servitude to remain at the rear of these lots would diminish their depth below that figure and, as defendant stated, "It would definitely make them less desirable lots, there's no doubt about it, and less desirable lots generally bring less money." In essence, this is the sole proof appearing in the record that in any way explains how the servitude "has become more burdensome" to defendant: it will cause him to make less profit on the sale of less than a dozen lots. Yet, under C.C. 777, it is clear that the "primitive assignment" of the servitude has in fact become more burdensome. When the servitude was originally created in 1923, it is doubtful that the owner of the servient estate contemplated the use of his rural property as a suburban neighborhood. The potential for development arose when circumstances changed: it cannot be doubted that the existence of a country lane presents an altogether different imposition upon the owner of property when it runs through a residential subdivision rather than over rural, undeveloped land.
To the extent that defendant has shown that the servitude hinders his "free use of property," C.C. 753, there is corresponding proof that the location of the servitude has become more burdensome than it was originally. At the same time, it should be recognized that defendant has assumed the position of the original grantor of the servitude, and may not eliminate the benefit conferred by contract simply because it has become a matter of personal inconvenience to him. The record shows that defendant is entitled to relocate the servitude only where it diminishes the depth of the lots in the proposed subdivision below the figure required for the most advantageous use of the property. On the plat, the property thus affected is the area between Greenwell Springs Road and the street designated as Wascom Lane. If defendant can offer plaintiff an alternate passageway between these points, the servitude may be displaced to that extent. It cannot seriously be contended *1045 that requiring plaintiff to drive over a residential street for a short distance does not provide him with "a place equally convenient for the exercise of his rights." C.C. 777. The satisfaction plaintiff may derive from using the land as it is now cannot outweigh the burden imposed upon his neighbors.
Although defendant is not entitled to relocate the entirety of the servitude, that is not to say that the servitude can never be displaced: future owners of the encumbered land may well be able to claim the right of relocation, if plaintiff is provided an equally convenient passageway. As the matter now stands, however, defendant has simply failed to prove that the continued existence of the right of passage inflicts a burden upon him that is any greater than that which the original grantor had to bear, except in the area described above.
The judgment of the Court of Appeal is affirmed in part and reversed in part and the case is remanded to the district court for further proceedings consistent with this opinion. All costs of these proceedings are taxed equally to plaintiff and defendant.
BLANCHE, J., recused having previously acted in the case.
WATSON, J., dissents.
NOTES
[1] Perhaps through inadvertence, the parties did not favor this court with the plat supposedly attached to this act of sale, which is said to show the precise location of the 5.33 acre tract. From the description given in the conveyance, it is clear that this tract did not include any part of the dominant estate, owned by Charles C. Bird.
[2] In 1977 Title IV of Book II of the Civil Code, consisting of articles 646 to 822, was amended and reenacted. Acts 1977, No. 514, § 1. The amended title, effective January 1, 1978, consists of articles 646 to 774. Because the articles pertinent to this case were not substantially changed in the revision, reference will be made to both the old and the new provisions.
[3] C.C. 748 provides:

"The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude.
If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of relocation are borne by the owner of the servient estate."