FORET, Judge.
This dispute concerns the possession and use of an alleyway located between property owned by plaintiff, Elia Breaux Bien-venu, and defendants, Lawrence H. Foti and Anna Mae Saprano Foti. The trial court rendered judgment in favor of plaintiff, and defendants have appealed on the basis of three assignments of error.
FACTS
We begin by attaching hereto a sketch which was made part of the trial court’s reasons for judgment. This sketch depicts the location of the alleyway and various other properties involved in this lawsuit. The property located on Port Street and labeled “J.C. Bienvenu” is owned by plaintiff and shall hereinafter be referred to as the Bienvenu property. Defendants own the property situated directly north of the alleyway and labeled “Bertrand Audibert” on the attached sketch. This property shall hereinafter be referred to as the Bertrand Audibert property. Defendants also own a lot and building located east of and running perpendicular to the alleyway which is labeled “Mr. Foti” on the attached sketch and shall hereinafter be referred to as the “Foti property.”
The alleyway in dispute is approximately 12.5 feet in width and, as shown on the attached sketch, runs from Port Street in a northerly direction up to the Bertrand Au-dibert property. It was established at trial that a 1906 partition agreement between the heirs of Marshall Bienvenu established a servitude of passage over the alleyway for the use and benefit “of all the properties formerly belonging to the Estate of M. Bienvenu and wife, bounding and adjoining same ...” The Bienvenu and Foti properties were involved in the 1906 partition of the Marshall Bienvenu property and are therefore favored with a servitude of passage over the alleyway in question. The Bertrand Audibert property does not form a part of the Marshall Bienvenu property and accordingly, the right of passage was not created for its use and benefit.
Plaintiff and her husband began living on the Bienvenu property in 1933. She states that as early as 1933, there were two or three small buildings located across the northern end of the alleyway. Thereafter, around 1942, these buildings were torn down and replaced by a storage shed which was also located across the alleyway. Plaintiff states that she tore down this storage shed in 1975 or 1976 and used some of the lumber to construct a fence along the northern boundary line of the alleyway. Thereafter, in 1981, plaintiff installed a chain link fence along the northern boundary line of the alleyway and, approximately two years later, plaintiff installed a gate across the front or southern end of the alleyway. Plaintiff states that she took these measures because people were congregating in the alleyway at night and drinking alcoholic beverages. We should also note that, in addition to the fences and gates constructed by plaintiff, there is also at present a small shed located at least in part across the alleyway in question which has been used by plaintiff for storage.
The sequence of events leading to the present litigation began in July of 1984, at which time Mr. Foti approached plaintiff about using the alleyway to gain access to the Bertrand Audibert property. At that time, plaintiff was preparing to leave for Europe and therefore advised Mr. Foti to consult her attorney with regard to this *820 matter while she was away. Thereafter, no more discussions took place between the parties until March 26, 1987, at which time plaintiff noticed workers installing four gate posts in the alleyway, with two of the posts being located against her house. Plaintiff approached Mr. Foti, who advised her that he was going to install two gates behind the Foti property to store materials. Plaintiff states that she informed Mr. Foti that the posts located against her house were on her property and she asked him to remove them. Mr. Foti refused to do so and plaintiff subsequently took them out and tossed them into the alleyway. Later that same day, plaintiff saw Mr. Foti putting a post back against her house. She instructed him to take it out and when he refused, she once again removed the post. Mr. Foti then advised plaintiff that he was going to rip her gate out.
The next occurrence of note took place on April 13 or 14 of 1987. At this time, Mr. Foti and his sons tore down plaintiffs gate located on the front end of the alleyway, as well as the chain link fence located along the back of the alleyway. When plaintiff erected temporary fencing to protect flowers she had planted in the area, Mrs. Foti removed this fencing and tossed it back into plaintiffs yard. Plaintiff approached Mrs. Foti with a camera while Mrs. Foti was removing the fence and Mrs. Foti called plaintiff “trash” and invited plaintiff to take her picture. Following this, plaintiff put the temporary fencing back up and it was once again removed by Mrs. Foti on May 5, 1987. Thereafter, on May 8, Mrs. Foti approached plaintiff while plaintiff was in her back yard, and when plaintiff went into her house to avoid a confrontation, Mrs. Foti proceeded to tear down portions of the cypress fence located along the back- of the alleyway and went into the shed located nearby and removed plaintiff’s personal belongings and threw them into her backyard. Mrs. Foti admits to having done this and conceded at trial that she did so “in a rage of anger.”
Plaintiff instituted this suit for declaratory judgment, asking the court to determine the dimensions and limits of the alleyway and further asking that the court decide whether or not defendants have the right to use the alleyway to gain access to the Bertrand Audibert property. Additionally, plaintiff prays for damages and for injunc-tive relief prohibiting the defendants from harassing, threatening, or intimidating plaintiff. The trial court rendered judgment in favor of plaintiff, finding the width of the alleyway to be 12.5 feet and decreeing that defendants do not have right of use of the alleyway in order to gain access to the Bertrand Audibert property. The trial court also awarded plaintiff $310 for property damage and $4,000 for mental and emotional distress. Additionally, the trial court enjoined defendants from engaging in any activity in or upon the alleyway other than that which is necessary or incidental to the exercise of defendants’ right of passage to the Foti property.
On appeal, defendants raisé the following assignments of error:
1. The trial court erred in prohibiting defendants from using the alleyway to gain access to the Bertrand Audibert property.
2. The trial court erred in granting damages to plaintiff when plaintiff’s own actions contributed to any possible damages suffered by plaintiff.
3. The trial court erred in granting damages to plaintiff when such damages were not proven.
ASSIGNMENT OF ERROR NO. 1
Defendants purchased the Foti property in 1984, and this sale gave defendants the right of passage over the alleyway in question. Defendants argue that it would not offend the “purpose” of the servitudes in question to allow defendants to use the alleyway to gain access to the Bertrand Audibert property. Defendants also point out that the alleyway extends all the way to the Bertrand Audibert property and consequently, defendants should be allowed to exercise their right of passage to the full extent of their title, thus permitting direct access to the Bertrand Audibert property. Defendants further argue that there are no restrictions contained in the servitude *821 agreement which would prohibit defendants’ use of the alleyway to gain access to the Bertrand Audibert property.
A predial servitude is a servitude established in favor of immovable property. It is a real right that is inseparable from the property to which it is attached. Ogden v. Bankston, 398 So.2d 1037 (La.1981). The extent and use of the conventional or voluntary servitude of passage is regulated by the title by which it is created. Id. Insofar as conventional servitudes are concerned, the extent of the right and mode of its exercise, unless the title provides otherwise, is that which is suitable for the kind of traffic necessary for the reasonable use of the dominant estate. La.C.C. art. 705; Hailey v. Panno, 472 So.2d 97 (La.App. 5 Cir.1985).
In the instant case, the servitudes in question are clearly conventional predial servitudes created for the use and benefit of the Bienvenu and Foti properties. We agree with defendants’ contention that the extent and use of conventional predial ser-vitudes are regulated by the title by which they are created. However, it is equally clear that such use must be in connection with the dominant estate which, in this case, is the Foti property and not the Bertrand Audibert property. To allow defendants to remove fences, buildings, and other improvements located in or along the alleyway to gain access to property for the benefit of which the servitude of passage was clearly not created, would run counter to express statutory law and jurisprudence. The servitude in question was created in the Bienvenu partition to permit access to Port Street, the now Foti property, as well as other property along the alleyway. It was not created for the use and benefit of the Bertrand Audibert property. Accordingly, defendants have no right to use the alleyway to gain access to the Bertrand Audibert property. We therefore find that the trial court did not err in deciding that the defendants are not entitled to use the alleyway in question in order to gain access to the Bertrand Audibert property.
We also note, in connection with this finding, that defendants had no right to remove any of the improvements or structures located in or along the alleyway. It is well established that removal of an object from a right of way is only required when the object obstructs or interferes with the use of the servitude. South Central Bell Telephone Company v. Dempster, 303 So.2d 280 (La.App. 1 Cir.1973). As noted previously, this is clearly not the situation in the instant case. We therefore find defendants’ first assignment of error to be without merit.
ASSIGNMENT OF ERROR NOS. 2 and 3
Defendants’ second and third assignments of error pertain to the trial court’s award- of $4,000 for plaintiff’s emotional distress. Firstly, defendants contend that the plaintiff’s emotional distress was not adequately proven. Secondly, defendants assert that in the event plaintiff did, in fact, experience emotional distress, she brought this upon herself by provoking or inciting many of the confrontations with defendants. For this reason, defendants argue that the trial court’s damage award should be overturned or, in the alternative, reduced.
Louisiana has long recognized á cause of action for intentional infliction of emotional distress. To recover, the plaintiff must prove that the defendant either actively desired to bring about mental anguish or realized, to a virtual certainty, that it would occur. Recovery, however, has generally been limited to instances of outrageous or reprehensible conduct. Boudoin v. Bradley, 549 So.2d 1265 (La.App. 3 Cir.1989). See also Smith v. Mahfouz, 489 So.2d 409 (La.App. 3 Cir.1986), writ denied, 494 So.2d 1181 (La.1986) for a case similar to the case sub judice. Mental anguish resulting from property damage is recoverable in the following situations:
1. When property is damaged by an intentional or illegal act;
2. When property is damaged by acts for which the tortfeasor will be strictly or absolutely liable;
*822 3. When property is damaged by acts which constitute a continuing nuisance; or
4. When property is damaged when the owner is either present or nearby and suffered psychic trauma as a result thereof.
Blache v. Jones, 521 So.2d 530 (La.App. 4 Cir.1988).
Turning now to the facts of the instant case, the record reflects that the defendants engaged in a persistent course of conduct which undoubtedly caused plaintiff a great deal of emotional distress. Plaintiff testified at length about the traumatic effect this ongoing dispute has had on her life. She stated that on those occasions in which she witnessed the defendants destroying her property, she became extremely upset, causing her heart to race and prompting her to make numerous calls to local law enforcement authorities, as well as her treating physician. Her testimony in this regard is supported by that of Sidney Dupois, who was plaintiffs personal pharmacist as well as her son-in-law. He testified that the defendants’ actions have made plaintiff tense and anxious to the extent that she sometimes experiences shortness of breath. Additionally, Dupois testified that plaintiff, who was seventy-six years of age as of the date of trial, has a heart condition which requires her to take two types of nitroglycerin. The first type of nitroglycerin taken by plaintiff is a fixed dosage taken on a daily basis. However,, in addition to this, Dupois states that a second type of nitroglycerin, called sublingual nitroglycerin, is taken by plaintiff on an as-needed basis to relieve sudden angina attacks. According to Dupois, plaintiffs use of the sublingual nitroglycerin increased substantially during the period beginning March 26, 1987 and ending June 30, 1987, and he produced prescription records to corroborate his testimony in this regard.
Considering the above, we find no merit to defendants’ contention that plaintiffs damages were not adequately proven at trial. Plaintiff has understandably undergone a great deal of emotional distress as a result of the defendants’ activities. Additionally, she has suffered from increased angina attacks, and has experienced shortness of breath and sweating when she has become upset over these events. We therefore find that plaintiff has adequately proven her entitlement to damages for emotional distress. We further find, under the criteria set forth in Boudoin v. Bradley, supra, that plaintiff is entitled to recover damages for defendants’ intentional infliction of emotional distress in view of the fact that it has clearly been demonstrated that the defendants, at minimum, realized to a virtual certainty that their actions would cause an elderly woman such as plaintiff much anxiety, worry, and grief. Furthermore, considering the instances in which awards for mental anguish resulting from property damage are allowed, we find that the evidence of record establishes that the defendants did intentionally destroy plaintiff’s property and accordingly, at least one of the four situations listed in Blache v. Jones, supra, exists in the instant case. Accordingly, defendants’ argument to the contrary is found to be without merit.
Defendants also contend that plaintiff contributed to her own injuries and that consequently, the trial court’s damage award for plaintiff’s emotional distress should be overturned or, in the alternative, reduced. We disagree. The evidence indicates that on two occasions plaintiff did remove gate posts located against her house because she believed they were on her property. In response to plaintiff’s actions, defendants proceeded to tear down plaintiff’s gate and fences, as well as remove her personal belongings from a shed located in the rear of the alleyway. Clearly, plaintiff’s actions in removing the gate posts against her house do not rise to the level of provocation such as to in any way excuse such conduct by defendants. Thus, we have little difficulty in finding that plaintiff did not bring upon her injuries or damages by inciting or provoking the defendants’ actions. Having made this determination, we must find defendants’ argument in this regard to be without merit.
*823 Considering the above and foregoing, the judgment of the trial court is affirmed, and all costs of this appeal are assessed to defendants-appellants, Lawrence H. Foti and Anna Mae Saprano Foti.
AFFIRMED.
APPENDIX
[[Image here]]