JAMES L. DENNIS, Circuit Judge,
dissenting:
At issue in this case is whether the owners of the Levy family plantation in Caddo Parish, Louisiana, who in 1923 deeded a strip of land bisecting the plantation to the Texas and Pacific Railway Company for railroad use, reserved a predial servitude of passage across the railroad’s strip of land for the benefit of the plantation. The 1923 deed, in pertinent part, provides:
It is understood and agreed that the said Texas & Pacific Railway Company shall fence said strip of ground and shall maintain said fence at its own expense and shall provide three crossings across said strip at the points indicated on said Blue Print hereto attached and made part hereof, and the said Texas and Pacific Railway hereby binds itself, its successors and assigns, to furnish proper drainage out-lets across the land hereinabove conveyed.
The parties agree that the provision requiring the railroad to “provide three crossings across said strip” created a servitude of passage. (A servitude is a “charge laid on an estate.” Art. 647.)[1] The parties dispute, however, whether the deed created a personal servitude (that is, a right of passage benefitting specific persons — here, the Levy family — and terminating with the lives of those persons) or a predial servitude (that is, a right of passage benefitting an estate — here,' the Levy plantation — whoever may come to own it). The majority, however, rejects both positions in favor of a third option the parties *1049 did not raise: that the deed did not impose any charge upon an estate, but only imposed a personal obligation on the part of the Texas and Pacific Railway Company (which no longer exists and has been replaced as owner of the railroad strip by the appellant, the Union Pacific Railroad Company). For the reasons that follow, I respectfully dissent.
It should be obvious that, when the Levy family sold a strip of land to the Texas and Pacific Railway Company and included in the deed the reservation that the railroad “provide three crossings across” the purchased land at designated places, the parties intended to afford a right to use the crossings. There is no reasonable explanation why the Levy family would have reserved the right to crossings as a condition of the land sale if they would have been trespassers when stepping foot on the crossings. It is self-evident that the deed’s provision of three crossings encompasses a right of passage across those crossings, and, under the Civil Code, “[t]he right of passage, or of way, is a servitude.” Art. 722 (emphasis added); see also Art. 721 (stating that the right of passage is one of the “principal rural servitudes”). Thus, we must start from the premise that, unless shown otherwise, the parties intended to create what the Civil Code provides: a servitude. The question presented, as recognized and argued by the parties, is whether they intended for the servitude of passage to be predial or personal.[2]
The deed does not say which sort of servitude was intended and, therefore, “the question whether the parties intended to create a predial servitude or another right is to be made in accordance with articles [755] through [757] of the Civil Code.” 4 A.N. Yiannopoulos, Louisiana Civil Law Treatise: Predial Servitudes, § 6:28 (4th ed.). Article 755 instructs that the question turns on “whether the right granted be of real advantage to the estate, or merely of personal convenience to the owner.” The next two articles elaborate. Article 756, the most critical article for our purposes, provides:
If the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled.
Thus, for example, if the owner of a house contiguous to lands bordering on the high road, should stipulate for the right of passing through lands, without it being expressed that the passage is for the use of his house, it would be not the less a real servitude, for it is evident that the passage is of real utility to the house.
Article 757 provides that, “[i]f, on the other hand, the concession from its nature is a matter of mere personal convenience, it is considered personal, and can not be made real but by express declaration of the parties.” It gives as an example “the right of walking and gathering fruits and flowers [in] a garden or park.” Art. 757.
Here, there can be little doubt that the railroad crossings “assure a real advantage to an estate” (article 756) rather than pro *1050 vide a “mere personal convenience” to the original 1923 owners (article 757).
First, the benefit to the plantation estate is clear. Generally, plantation owners want access to their plantations, and more convenient means of access are preferred over less convenient alternatives. The railroad crossings here allow the owner of a plantation that has been divided by the railroad’s strip to, conveniently cross from one section of the estate to the other. Absent the crossings, a less convenient, circuitous path would be required. The crossings are a plain advantage. Moreover, without the railroad crossings, the land that has been divided by an intersecting railroad is rendered less accessible, and its value is consequently diminished. Put another way, the crossings served to increase and/or maintain the value of the Levy family’s plantation. See Burgas v. Stoutz, 174 La. 586, 141 So. 67, 69 (1932) (holding that a servitude of passage was predial rather than personal because, inter alia, it had the effect of “making the property more desirable and valuable”).[3]
Second, it is clear that the benefit provided is to the estate itself rather than to an individual. See State v. Cefalu, 288 So.2d 332, 338 (La.1974) (“An examination of the grant reveals that it meets the basic requirement of predial servitudes — it is clearly of benefit to a dominant estate, namely the Cefalu tracts. The effect of the grant was to guarantee the Cefalu tracts direct access to each other. As a result it is clear that the Cefalu tracts were benefited.”); Plaisance v. Gros, 378 So.2d 178, 179 (La.Ct.App.1979) (holding that the right of way contained in a 1906 deed was a predial servitude because it conferred “a real advantage to the then Dugas estate and not merely a personal convenience to the owner”). In fact, it is difficult to imagine a more plain benefit to an estate bisected by a railroad than passage over crossings affording the tracts “direct access to each other.” See Cefalu, 288 So.2d at 338. In Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (1910), for example, the Louisiana Supreme Court had little difficulty concluding that a railroad’s contract to provide crossings afforded a predial, not personal, servitude: “The right followed the property and was not personal to the owner. The original owner acquired the right as a servitude for the benefit of the estate and not for his own benefit.” Id. at 564.
Because it is clear that the railroad crossings provide a benefit to the estate, “it is to be presumed” under article 756 that they constitute a predial servitude. Thus, the question becomes, are there sufficient indicia in the record to rebut the predial presumption and rather find, as the Union Pacific Railroad Company argues, that the parties intended a personal servitude or, as the majority concludes, that the parties intended only a personal obligation?
Case law from Louisiana courts suggests that less-than-clear indications that a servitude may be personal rather than predial do not suffice to rebut the predial presumption under article 756. For example, *1051 in Ogden v. Bankston, 398 So.2d 1037 (La.1981), at issue was, as here, a 1923 property transfer. Id. at 1040. There, the terms of the act of sale provided a servitude of passage “to the vendor.” Id. That the right of passage was granted, under the text of the document, “to the vendor” rather than to the estate might tend to suggest, of course, that the parties intended to create a personal right, that is, a personal servitude, for the vendor. However, the Louisiana Supreme Court, citing article 756, explained that such suggestion was insufficient to overcome the predial presumption: “Although the language creating the servitude in the 1923 act of sale recites that the passageway'was granted ‘to the vendor,’ it is evident that the right of passage was a real benefit to the estate itself. For this reason, the servitude must be construed as a real right, not one which was personal to the grantee.” Id. at 1041. In addition to Ogden, other similar cases include Whitney National Bank of New Orleans v. Poydras Center Associates, 487 So.2d 120, 123 (La.Ct.App.1986) (“It matters not that the language of the Act was couched in personal terms, for the right created was a real advantage to the dominant estate....”), and McLure v. Alexandria Golf and Country Club, Inc., 344 So.2d 1080, 1089 (La.Ct.App.1977) (“[D]efendant[] argu[es] that the servitude did not outlive Kaiser because it was given to ‘vendor’ and not to ‘vendor, his heirs and assigns.’ It has been specifically held that the addition of such language is not necessary for property rights in the nature of a. servitude to pass to one’s heirs.”).
Here, there is a persuasive reason to find that the parties intended for the railroad crossings to be a predial servitude rather than, as the Union Pacific Railroad Company argues, a personal one. The 1923 deed states in its opening clause:
This instrument made and executed by and between Louis Levy, resident of said parish and state [Caddo Parish, Louisiana], George W. Levy, Miss Julia Levy, Miss Fannie Levy, and Miss Carolina Levy, represented herein by Louis Levy, her agent and attorney in fact, residents of the City of New York, and State of New York; Aaron Levy, a resident of the Parish of Caddo and State of Louisiana, and Mrs. Annie Levy Dreyfus, wife of Leon Dreyfus, resident of the City of London, in the Kingdom of Great Britain, represented herein by Louis Levy, her agent and attorney in fact, parties of the first part, and the Texas & Pacific Railway Company, a corporation organized under the laws of the United States of America, whereof J.L. Lancaster and C.L. Wallace are Receivers, party of the second part.
(Emphasis added.) On one side of the 1923 transaction was the railway, and on the other side were a number of people, at least some of whom, importantly, resided outside Louisiana, in New York City and London. If the appellant was correct that the parties to this transaction intended for the railroad crossings to be a personal servitude, it would mean that the parties intended for the railroad crossings to benefit persons residing a world away. It is fantastical to presume, without evidence or expression, that persons residing in New York City and London had reserved the right of passage in Caddo Parish, Louisiana, as a matter of personal convenience similar to, e.g., the right of gathering fruits and flowers in a garden. See Art. 757. (Contrast, for example, Deshotels v. Fruge, 364 So.2d 258, 260-61 (La.Ct.App.1978), wherein the court found that a servitude was personal based on actual testimony about the beneficiary’s personal reasons for desiring the servitude.) Based on the record in this case, the far more evident answer is that these persons in New York and London “acquired the right as a servi *1052 tude for the benefit of the estate and not for [their] own benefit.” See Taylor, 52 So. at 564 (holding that railroad crossings were a predial servitude); cf. Gillis v. Nelson, 1861 WL 3840 (La.1861) (stating, with respect to an irrigation servitude, that “the contract does not appear to us to be personal, for its object could only be for the advantage of the respective tracts of land”).
To reach its contrary conclusion, the majority points to that part of the 1923 deed which states that “the said Texas and Pacific Railway hereby binds itself, its successors and assigns, to furnish proper drainage out-lets across the land herein-above conveyed.” (Emphasis added.) The majority explains:
The problem for Franks is that Franks is trying to establish a predial servitude by presumption because the crossings clause does not expressly create a predial servitude, but the parties to the 1923 deed showed that they knew how to establish a predial servitude expressly in the drainage clause — not just in part of the same deed but in' the very same sentence. Specifically, whereas the crossings clause binds only Texas & Pacific Railway Company to maintain fences and provide crossings (which does not necessarily establish a predial servitude), the drainage clause binds not only Texas & Pacific Railway Company but “itself, its successors and assigns,” which is sufficient to create an express predial servitude.
Ante, at 1040.
Respectfully, I disagree that the “successors and assigns” language relating to the railroad’s drainage obligations rebuts the predial presumption as to the right of passage. The drainage obligations are' separate and apart — distinct—from the right of passage across the railroad .crossings, and the railroad’s agreement to bind itself and “its successors and assigns” to furnish drainage outlets across the land conveyed to it does not in any way add to or detract from the predial servitude of passage granted for the benefit of the Levy estate. Whether it was unusual for the railroad to bind itself, “its successors and assigns,” in its obligation, or why it did so, is not a material issue in this case, but a matter that could vary widely depending on the company, the landowners, the terrain, and the particular circumstances involved. Nothing in the Civil Code, other legislation, or custom prevented the landowners from obtaining both a predial right of passage in favor their estate across the railroad’s estate and the railroad’s obligation, binding on its “successors and assigns,” to “furnish proper drainage out-lets across the land herein-above conveyed.”
The majority asks the wrong question: why did the parties “include the ‘successors and assigns’ language in the drainage clause”? See ante, at 1047. I see no reason for the plaintiffs to be required to explicate the drainage clause’s meaning. The better question is, did the parties intend to create a predial servitude of passage across the railroad crossings even though they did not include “successors and assigns” language, in that provision of the deed? For the reasons explained, the law gave them no reason to think that the absence of “successors and assigns” language indicated neither a predial or personal servitude but rather a personal obligation. The right of passage “is a servitude,’’ the Code says. Art. 722. In fact, the Code describes the right of passage as one of the “principal rural servitudes.” Art. 721 (emphasis added). And the Louisiana courts have evinced no hesitation to construe rights of passage, including those over railroad crossings, to be predial servitudes. See, e.g., Taylor, *1053 52 So. at 564. It was in the context of the Civil Code’s articles on servitudes that the parties drafted the deed, and, when considered in that light, the addition of “successors and assigns” language with respect to the railroad crossings was not necessary. It was,.rather, a reasonable omission. I suspect that, had the Levy family any way of knowing how this court would construe their deed nearly a century after it was written, they would be surprised to learn that, when they required railroad crossings as a condition for the sale of their land, they did not obtain a property right at all, but only a contractual right with one single railroad, meaningless against any other railroad that may succeed it.
In sum, under article 756, which provides the controlling rule of law in this case, this court must presume that the railroad crossings afforded in the 1923' deed constitute a predial servitude, and I do not believe that there is a reasonable basis to find that the presumption has been rebutted. On the contrary, there are persuasive reasons to conclude that the parties indeed intended to create a predial servitude for the benefit of the Levy family plantation. Therefore, I respectfully dissent from the majority’s conclusion, argued for by none of the parties, that, as a matter of law, the deed created nothing more than a purely personal right of passage for the members of the Levy family as individuals and a personal obligation on the part of the Texas and Pacific Railway Company to allow such passage, and not a predial right for the benefit of the Levy plantation estate.

. I agree with the majority that the 1870 Revised Civil Code of Louisiana, which was in effect in 1923, governs this case rather than the modern version. Hereinafter, unless specified otherwise, all citations to codal provisions refer to the 1870 code.

. Theoretically, the parties could have created' only a purely personal right of passage for the members of the Levy family and a corresponding purely personal obligation by the Texas and Pacific Railway Company to allow . such passage. See Art. 1764 ("All things that are not forbidden by law, may legally become the subject of, or the motive for contracts.”); Art. 1885 ("All things, in the most extensive sense of the expression, corporeal or incorporeal, movable or immovable, to which rights can legally be acquired, may become the object of contracts.”). The question, however, is whether there is any valid reason to think that the parties did not intend to create either a personal or predial servitude of passage. For the reasons explained infra, I do not think there is.

. At oral argument, the Union Pacific Railroad Company contended that we could not infer a benefit to the estate in the absence of specific supporting evidence. That argument is not persuasive. The benefit that adheres to a landowner when he is afforded convenient access from one part of his land to another is the sort of common knowledge of which we can infer. See, e.g., McGuffy v. Weil, 120 So.2d 358, 362 (La.Ct.App.1960) (“That the erection and operation of commercial establishments, not only adjacent to residential property but in the immediate vicinity thereof, sometimes adversely affect the use and enjoyment of one’s home is a matter of common knowledge.”); State v. Cefalu, 288 So.2d 332, 338 (La.1974) (finding a benefit to an estate based on ”[a]n examination of the grant”).