# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-30990

United States Court of Appeals
Fifth Circuit

**FILED**

December 2, 2014

Lyle W. Cayce
Clerk

FRANKS INVESTMENT COMPANY, L.L.C.,

Plaintiff-Appellant,

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, DENNIS, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Plaintiff-Appellant Franks Investment Co., LLC ("Franks") appeals from the district court's final judgment granting the motion for summary judgment filed by Defendant-Appellee Union Pacific Railroad Co. ("Union Pacific") and dismissing Franks's claims with prejudice. For the reasons set out below, we AFFIRM.

No. 13-30990

## FACTS AND PROCEEDINGS

This action is the latest in a series of legal battles between Franks and Union Pacific over whether Franks has the right to cross Union Pacific's train tracks on certain property in Caddo Parish originally owned by the Levy family at the turn of the 20th century. In 1902, the Levys sold a strip of land running through its tract to the Texas & Pacific Railway Company ("T&P"). The deed required T&P to "put in all necessary crossings" and "not to obstruct drainage." In 1913, the Levys dedicated a road across their land to Caddo Parish, and agreed to "furnish the new posts" for this land on the condition that the Parish move a fence and "put in three crossings over ditches."

In 1923, the Levys and T&P completed another transaction, the deed to which is the focal point of this case (hereinafter the "1923 deed"). This transaction involved the sale of a larger and longer strip of land to T&P, and allowed the railroad company to move its tracks southwest. The 1923 deed contains the language directly at issue in this appeal. After stating the dimensions of the land, establishing the purchase price of $3,106, and granting the property "unto said purchaser, its successors and assigns forever," the deed states:

> It is understood and agreed that the said Texas & Pacific Railway Company shall fence said strip of ground and shall maintain said fence at its own expense and shall provide three crossings across said strip at the points indicated on said Blue Print hereto attached and made part hereof, and the said Texas and Pacific Railway hereby binds itself, its successors and

2

No. 13-30990

assigns, to furnish proper drainage out-lets across the
land hereinabove conveyed.[1]

Franks now owns a portion of the Levy property adjacent to the railroad tracks. Union Pacific owns the strip of railroad property previously owned by T&P. In 2007, Union Pacific began closing the crossings. Prior to the closing of the crossings, they were apparently being used for oil and gas operations on Franks's land. Franks is asserting a right to three separate crossings. Two of these crossings are within 10 to 12 feet of the locations shown in the blueprint attached to the 1923 deed, and one is more than 1,400 feet away from the location shown. Franks asserts that the crossings were in uncontested use for "over 70 years." Franks concedes that there are other points of access to the property.

Franks previously brought a possessory action against Union Pacific seeking to restore its use of four railroad crossings over Union Pacific's track.[2] After an appeal to this court sitting *en banc* to determine whether Franks's claims were federally preempted,[3] the district court ruled, following a bench trial, that because Franks did not possess the crossings adversely to Union

---

[1] *Franks Inv. Co., LLC v. Union Pac. R. Co.*, 972 F. Supp. 2d 891, 894-95 (W.D. La. 2013).

[2] "The possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La. Code Civ. Proc. art. 3655.

[3] *Franks Inv. Co. LLC v. Union Pac. R. Co.*, 593 F.3d 404, 415 (5th Cir. 2010)

3

No. 13-30990

Pacific's ownership, it was merely a "precarious possessor."[4] We affirmed in a short per curiam opinion.[5]

Franks filed this petitory action next,[6] claiming actual ownership of the rights to the three crossings referred to in the 1923 deed, rather than mere possession. Franks argued that the 1923 deed transferring the property from the Levys to T&P gave the Levys a predial servitude in the crossings. A predial servitude is "a charge on a servient estate for the benefit of a dominant estate."[7]

Union Pacific moved to dismiss, asserting that the deed, by its plain language, did not create a predial servitude, and that any servitude that was conveyed via the deed was strictly personal to the Levys, ending when they transferred the land. Declining to adopt the magistrate judge's recommendation to grant the motion to dismiss, the district court denied the motion in order to develop the facts of the case. After some written discovery and depositions, Union Pacific moved for summary judgment, arguing that the language could have created a personal servitude only, and, in the alternative, that any predial servitude that the court would find should be limited in scope to agricultural use.

---

[4] *Franks Inv. Co., LLC v. Union Pac. R. Co.*, 2011 WL 6157484, *3-4 (W.D. La. June 14, 2011).

[5] *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 464 Fed. App'x 415, 416 (5th Cir. 2012).

[6] "The petitory action is one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely, to obtain judgment recognizing the plaintiff's ownership." LA. CODE CIV. PROC. art. 3651.

[7] LA. CIV. CODE art. 646. As discussed below, the law applicable to the interpretation of the 1923 deed is actually that in effect when the deed was confected, but this basic definition is fundamentally the same.

4

No. 13-30990

The district court noted that discovery did not produce any information bearing "on the legal interpretation of the 1923 deed."[8] The court cited a number of Louisiana cases finding the existence of a predial servitude in a single clause based on a presumption established under Louisiana law.[9] It noted, however, that none of those cases "presented an additional clause, such as the drainage clause [in the 1923 deed], that had to be considered in interpreting the contract."[10] The drainage clause specifically binds T&P *and* "its successors and assigns" to furnish drainage.[11] The clauses obligating T&P to provide fencing and passage contained no such language.[12]

According to the district court, without the drainage clause and its specific "successors and assigns" language, "[t]he general principles regarding the interpretation of servitudes suggests [sic] that the crossing clause, *standing alone*, would create a predial servitude."[13] But given the existence of the drainage clause, reading the right of passage as a predial servitude would "render the successors and assigns language in the drainage clause merely empty surplusage, which should be avoided."[14] Moreover, Franks conceded below that "[t]he use of the phrase 'successors and assigns' in the 1923 act was either 'bad lawyering' or surplusage."[15] The court concluded that the language

---

[8] *Franks*, 972 F. Supp. 2d at 895.
[9] *Id.* at 897-98.
[10] *Id.* at 900.
[11] *Id.* at 899.
[12] *Id.*
[13] *Id.* at 900 (emphasis added).
[14] *Id.*
[15] *Id.* at 897.

No. 13-30990

was "unambiguous," and refused to "attempt to substitute its judgment about what the parties meant or intended."[16] It therefore granted Union Pacific's motion for summary judgment and dismissed Franks's claims with prejudice.[17]

On appeal, Franks argues that the district court erred in denying the existence of a predial servitude in the three crossings.

## STANDARD OF REVIEW

This court "review[s] a district court's grant of summary judgment de novo," applying the usual standards under FED. R. CIV. P. 56.[18] The panel must resolve ambiguities in favor of the non-moving party.[19]

## DISCUSSION

This case turns on interpretation of the 1923 deed. "A document purporting to create a predial servitude is interpreted in accordance with both the general rules of contract construction as well as in accordance with specific rules of construction for instruments that purport to create servitudes."[20] We apply the law in effect in 1923, at the time the deed was confected,[21] which was the Revised Civil Code of Louisiana of 1870 (hereinafter "RCC"). The RCC was amended in the 1970s, resulting in the modern Louisiana Civil Code, but both the district court and the parties agree that the same result should obtain

---

[16] *Id.* at 900.

[17] *Id.*

[18] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[19] *Total E&P USA, Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

[20] *Ryan v. Monet*, 95-1332 p. 3-4 (La. App. 4 Cir. 12/28/95), 666 So. 2d 711, 714.

[21] *See, e.g., U. S. Daughters of 1812-Chalmette Chapter v. Louisiana Dep't of Culture, Recreation & Tourism*, 404 So. 2d 941, 944 n.6 (La. 1981) (applying the law in effect when a 1921 contract was executed, not the version of the law which was revised in 1978).

No. 13-30990

under the law in effect in 1923 or today.[22] Although Franks points to different language in the RCC compared to the current version of the Civil Code, it has not pointed to any *material* difference which would alter the district court's reasoning or the result it reached. Nevertheless, because the law of 1923 is the applicable law, we primarily address the relevant provisions of the RCC, citing wherever possible the modern equivalent in the Civil Code.

## I. Principles of Contract Interpretation

In 1923, as now,[23] the main goal of contract interpretation under Louisiana law is determining the common intent of the parties:

> Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
>
> *First*—That no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
>
> *Second*—That courts are bound to give legal effect to all such contracts according to the true intent of all the parties;

---

[22] In its ruling, the district court explained: "the parties have briefed the case with reference to the current Civil Code articles governing servitudes. Neither party contends that the articles in effect at the time of the 1923 instrument would direct a different outcome, so the court has assessed the issues with reference to the current articles, as well as the jurisprudence that has developed in this area over the intervening nine decades." *Franks*, 972 F. Supp. 2d at 895 n.5 (W.D. La. 2013).

[23] "Interpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE art. 2045.

7

> *Third*—That the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
>
> *Fourth*—That it is the common intent of the parties—that is, the intention of all—that is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.[24]

To that end, we interpret words using their "general and popular use,"[25] unless they are "[t]erms of art or technical phrases," in which case they "are to be interpreted according to their received meaning with those who profess the art or profession to which they belong."[26] "When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract."[27]

"When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense

---

[24] RCC art. 1945; LA. CIV. CODE art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

[25] RCC art. 1946.

[26] RCC art. 1947; LA. CIV. CODE art. 2047 ("The words of a contract must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the contract involves a technical matter.").

[27] RCC art. 1948; LA. CIV. CODE art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."). If, however, the contract cannot be interpreted in itself, "it may be explained by referring to other contracts or agreements made on the same subject between the same parties, before or after the agreement in question." RCC art. 1949; LA. CIV. CODE art. 2053 ("A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.").

which would render it nugatory."[28] "Terms, that present two meanings, must be taken in the sense most congruous to the matter of the contract."[29] "All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act."[30] All of these rules for interpreting contracts have modern equivalents in the Civil Code, so the district court's use of some recent cases does not change the result.

If a court may determine the unambiguous common intent of the parties from the language of the contract under the rules set out above, the analysis ends there.[31] "Under Louisiana law, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to more than one reasonable meaning under the circumstances and after applying established rules of construction."[32] Only when a contract is ambiguous is "extrinsic evidence . . . admissible to clarify the ambiguity or to show the parties' intent."[33]

---

[28] RCC art. 1951; LA. CIV. CODE art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").

[29] RCC art. 1952; LA. CIV. CODE art. 2048 ("Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract.").

[30] RCC 1955; LA. CIV. CODE art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.").

[31] *See Taita Chem. Co., Ltd. v. Westlake Styrene Corp.*, 246 F.3d 377, 386 (5th Cir. 2001) (applying Louisiana law and noting that "when the contract is not ambiguous, this Court lacks the authority to look beyond the four corners of the document").

[32] *Lloyds of London v. Transcon. Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996) (citation omitted).

[33] *McDuffie v. Riverwood Int'l Corp.*, 27,292, p.2 (La. App. 2 Cir. 8/23/95), 660 So. 2d 158, 160.

No. 13-30990

The district court concluded that the language of the 1923 deed was unambiguous and did not convey a predial servitude with respect to the three crossings; therefore, the court would not examine extrinsic evidence and would not "attempt to substitute its judgment about what the parties meant or intended."[34] In order to address the question of whether the language of the deed unambiguously conveyed a predial servitude, we must examine the nature of predial servitudes and how they are created.

## II. Background on Predial Servitudes

Predial servitudes (or real servitudes) were defined in the RCC as "those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate. They are called *predial* . . . servitudes, because, being established for the benefit of an estate, they are rather due to the estate than to the owner personally."[35] "A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner."[36] The RCC also established that it was necessary for there to be two estates and for each to have a different owner,[37] then stated:

> It is necessary, in the third place, that the servitude have for its object the use or benefit of the estate in favor of which it is established.

---

[34] *Franks*, 972 F. Supp. 2d at 900.
[35] RCC art. 646 (emphasis in original). LA. CIV. CODE art. 646 provides: "A predial servitude is a charge on a servient estate for the benefit of a dominant estate. The two estates must belong to different owners."
[36] RCC art. 647.
[37] RCC arts. 648 and 649; LA. CIV. CODE art. 646.

10

No. 13-30990

> But it is not necessary that this benefit exist at the time of the contract; a mere possible convenience or remote advantage is sufficient to support a servitude.
>
> In order to render a servitude null, it is not enough that it should appear to be useless, it must be shown that at no time, and under no circumstances, can it possibly become useful to the person in whose favor it is enacted.[38]

One significant consequence of a predial servitude, as opposed to a merely personal obligation, is that a predial servitude "is binding on subsequent owners who acquire the servient estate without further mention of the restriction in the act conveying the servient estate."[39] Furthermore, "[o]ne of the characteristics of a servitude is, that it does not oblige the owner of the estate subject to it to do anything, but to abstain from doing a particular thing, or to permit a certain thing to be done on his estate."[40]

In 1923, unlike now, the RCC classified servitudes as either urban servitudes (those established for the use of houses) or rural servitudes (those established for the use of land),[41] and one of the principle rural servitudes was

---

[38] RCC art. 650. LA. CIV. CODE art. 647 provides: "There must be a benefit to the dominant estate. The benefit need not exist at the time the servitude is created; a possible convenience or a future advantage suffices to support a servitude. There is no predial servitude if the charge imposed cannot be reasonably expected to benefit the dominant estate."

[39] *RCC Properties, L.L.C. v. Wenstar Properties, L.P.*, 40,996 p. 6 (La. App. 2 Cir. 6/5/06), 930 So. 2d 1233, 1237.

[40] RCC art. 655. LA. CIV. CODE art. 651 provides: "The owner of the servient estate is not required to do anything. His obligation is to abstain from doing something on his estate or to permit something to be done on it. . . ."

[41] RCC art. 710.

11

the servitude of passage.[42] This is a distinction without a difference because the servitude is defined essentially the same now as it was under the RCC:

> The right of passage, or of way, is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, on horseback, or in a vehicle, to drive beasts of burden or carts through the estate of another.
>
> When this servitude results from the law, the exercise of it is confined to the wants of the person who has it.
>
> When it is the result of a contract, its extent and the mode of using it is regulated by the contract.[43]

Under the RCC, as now, landowners could establish predial servitudes by convention, *i.e.*, by contract.[44] The RCC recognized that certain contractual obligations could be real or personal, depending on the parties' intent, and recognized that explicit language is preferable to implication:

> Servitudes being established on estates in favor of other estates, and not in favor of persons, *if the grant of the right declare it to be for the benefit of another*

---

[42] RCC art. 721.

[43] RCC art. 722. LA. CIV. CODE art. 705 provides: "The servitude of passage is the right for the benefit of the dominant estate whereby persons, animals, utilities, or vehicles are permitted to pass through the servient estate. Unless the title provides otherwise, the extent of the right and the mode of its exercise shall be suitable for the kind of traffic or utility necessary for the reasonable use of the dominant estate."

[44] RCC art. 709 ("Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper . . . ."). LA. CIV. CODE art. 654 provides: "Predial servitudes may be natural, legal, and voluntary or conventional. Natural servitudes arise from the natural situation of estates; legal servitudes are imposed by law; and voluntary or conventional servitudes are established by juridical act, prescription, or destination of the owner."

12

No. 13-30990

> *estate, there can be no doubt as to the nature of this right*, even though it should not he called a servitude.[45]

On the other hand, if the act does not declare that the grant of a right is for the benefit of an estate but merely for the benefit of a person, the RCC provided that it might still be a predial servitude if it conveyed "a real advantage to the estate" as opposed to "personal convenience to the owner."[46] Furthermore:

> If the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled.
>
> Thus, for example, if the owner of a house contiguous to lands bordering on the high road, should stipulate for the right of passing through lands, without it being expressed that the passage is for the use of his house, it would be not the less a real servitude, for it is evident that the passage is of real utility to the house.[47]

However:

> If, on the other hand, the concession from its nature is a matter of mere personal convenience, it is considered personal, and can not [sic] be made real but by express declaration of the parties.

---

[45] RCC art. 754 (emphasis added). LA. CIV. CODE art. 731 provides: "A charge established on an estate expressly for the benefit of another estate is a predial servitude although it is not so designated."

[46] RCC art. 755.

[47] RCC art. 756. LA. CIV. CODE art. 733 provides: "When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude."

13

No. 13-30990

> Thus for example, if the owner of a house near a garden or park, should stipulate for the right of walking and gathering fruits and flowers therein, this right would be considered personal to the individual, and not a servitude in favor of the house or its owner.
>
> But the right becomes real and is a predial servitude, if the person stipulating for the servitude, acquires it as owner of the house, and for himself, his heirs and assigns.[48]

As a backstop, the RCC provided: "Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected."[49]

Louisiana courts have also long recognized that parties to a contract may choose to create neither a predial servitude nor personal servitude but rather a personal obligation, i.e, an agreement that focuses on the duty of an obligor rather than a benefit either to an estate (predial servitude) or to a person (personal servitude), and which does not bind the obligor's successors-in-interest. In 1911, the Louisiana Supreme Court quoted with approval French civil law commentary to that effect:

> In case of doubt as to the nature of the service that has been stipulated, it is for the courts to decide, finally, whether the parties have intended to establish a real servitude or a personal servitude, or a simple right of

---

[48] RCC art. 757. LA. CIV. CODE art. 734 provides: "When the right granted is merely for the convenience of a person, it is not considered to be a predial servitude, unless it is acquired by a person as owner of an estate for himself, his heirs and assigns."

[49] RCC art. 753. LA. CIV. CODE art. 730 provides: "Doubt as to the existence, extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate."

> obligation. The terms of the act of agreement should furnish the principal element of the decision.[50]

The Louisiana Third Circuit later noted that the characterization of a clause as either a predial servitude, personal servitude, or personal obligation is a question of law determined by the ordinary principles of contract interpretation set out above:

> When contracting parties do not specify the kind of right they intended to create, the question may arise whether they intended to create a predial servitude, a personal servitude, or merely a personal obligation. This question is resolved in Louisiana by applying Civil Code articles 754-58, the rules of interpretation used to ascertain the kinds of rights created by juridical acts lacking express designation.[51]

In short, under the RCC, parties to a contract may remove all doubt by expressly declaring a predial servitude, and if they do not, the interpretation depends on the nature of the right granted or obligation required under the language of the contract. As the statutes set out above illustrate, the language of the contract must control the interpretation, and the parties would do well to make explicit their intention to create or not create a predial servitude. Case law bears out this focus on the language of the contract, both under the RCC and the current Civil Code. *See, e.g.*, *Burgas v. Stoutz*, 174 La. 586, 591 (1932)

---

[50] *Louisiana & A. Ry. Co. v. Winn Parish Lumber Co.*, 131 La. 288, 305, 59 So. 403, 408 (1911) (on original hearing) (quoting Baudry-Lacontinerie, *Traité de Droit Civil-Des Biens* (2d ed. 1899), p. 539). The court also quoted a passage from the Commentary of M. Huc which explained why personal obligations, i.e., those not running with the land, are permitted. *Id.*
[51] *McLure v. Alexandria Golf & Country Club, Inc.*, 344 So. 2d 1080, 1091 (La. Ct. App. 1977). The *McLure* case, like the *Louisiana & A. Ry. Co.*, came before the 1978 Code revisions and therefore unquestionably applies to the 1923 instrument at issue in this case.

(noting that language in a deed granting use of a driveway to "the purchaser, its successors and assigns" would have created a predial servitude); *Buckhorn Ranch, L.L.C. v. Holt,* 2008-1509 p. 2 (La. App. 3 Cir. 5/6/09), 10 So. 3d 367, 369, *writ denied,* 2009-1263 (La. 9/18/09), 17 So. 3d 977 (creating a predial servitude with the phrase "these servitudes shall be predial servitudes").

Nevertheless, both the RCC and the current Civil Code create a presumption in favor of predial servitudes when the right confers an advantage to an estate.[52] Louisiana courts have applied the presumption to infer the creation of predial servitudes in a number of instances. In *Burgas v. Stoutz,* for example, the Supreme Court of Louisiana found that a provision granting the use of a driveway on lot B to the owners of lot A was "of real utility" to lot A because it gave lot A "more free space either for building or for flowers, or for a garden, and making the property more desirable and valuable," and therefore created a predial servitude.[53]

Even in some cases where language in an act of sale specifically names one of the parties to the act as the beneficiary of the servitude, Louisiana courts have found a predial servitude rather than a personal servitude. In *McLure,*[54] the Court of Appeal held that an act of sale that stated "the vendee herein agrees to allow the vendor an outlet to Highway No. 165 and over and across the property herein purchased" created a predial servitude despite the use of the term "vendor," which could potentially have been interpreted to confer a right only to the seller. In *Whitney Nat. Bank of New Orleans v. Poydras Ctr.*

---

[52] RCC art. 756; LA. CIV. CODE art. 733.
[53] 174 La. at 592.
[54] 344 So.2d at 1089.

*Associates*,[55] the court found that the language "[s]aid Metropolitan Bank to have the right to use the aforesaid common alley" did not thwart the creation of a predial servitude because it "matters not that the language of the Act was couched in personal terms, for the right created was a real advantage to the dominant estate and the reservation of the right to build was likewise a real advantage to the servient estate."[56] Thus, there is no question that although it is better for contracting parties to be explicit regarding their intention to create a predial or personal servitude, courts will not hesitate to apply the predial servitude presumption in appropriate circumstances.

### III. Interpretation of the 1923 Deed

We turn now to the relevant language in the 1923 deed:

> It is understood and agreed that [1] the said *Texas & Pacific Railway Company* shall fence said strip of ground and shall maintain said fence at its own expense and shall provide three crossings across said strip at the points indicated on said Blue Print hereto attached and made part hereof, and [2] the said *Texas & Pacific Railway hereby binds itself, its successors and assigns*, to furnish proper drainage out-lets across the land hereinabove conveyed.[57]

For convenience and consistency with the district court opinion, we will refer to clause [1] as the "crossings clause," and to clause [2] as the "drainage clause."

In essence, Franks argues that the crossings clause creates a predial servitude because it was established to provide a benefit to the property owned

---

[55] *Whitney Nat. Bank of New Orleans v. Poydras Ctr. Associates*, 487 So. 2d 120, 122–23 (La. Ct. App. 1986), *writ denied*, 492 So. 2d 1221 (La. 1986).
[56] *Id.*
[57] *Franks*, 972 F. Supp. 2d at 894-95 (emphasis added).

by the Levys. Therefore, Franks argues, it is presumed to be a predial servitude under the RCC provisions and case law discussed above. The district court, citing much of the case law discussed above, agreed with Franks that the cases "are persuasive that the crossings clause, *standing alone*, would create a predial servitude."[58] However, the Court continued, "the parties have not drawn the court's attention to a case that presented an additional clause, such as the drainage clause, that had to be considered in interpreting the contract. For that reason, the caselaw [sic] is of less assistance than usual."[59]

We agree with the district court's assessment. If the crossings clause stood alone in the 1923 deed, then Franks likely would be correct that it would be subject to the predial servitude presumption. It does not stand alone, however. It is in the same sentence as the drainage clause, and we must interpret both provisions which satisfies "both the general rules of contract construction as well as in accordance with specific rules of construction for instruments that purport to create servitudes."[60] As the district court explained (and we agree):

> The court must, however, keep in mind the provisions of the Civil Code that (1) each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole and (2) doubt as to the existence of a predial servitude shall be resolved in favor of the servient estate. The court must also, if possible, give practical effect to all parts of the contract, so as to

---

[58] *Id.* at 900.
[59] *Id.*
[60] *Ryan*, 666 So. 2d at 714.

18

No. 13-30990

> avoid neutralizing or ignoring any of them or treating
> them as surplusage.[61]

The problem for Franks is that Franks is trying to establish a predial servitude by presumption because the crossings clause does not expressly create a predial servitude, but the parties to the 1923 deed showed that they knew how to establish a predial servitude *expressly* in the drainage clause—not just in part of the same deed but in the very same sentence. Specifically, whereas the crossings clause binds only Texas & Pacific Railway Company to maintain fences and provide crossings (which does not necessarily establish a predial servitude), the drainage clause binds not only Texas & Pacific Railway Company but "itself, its successors and assigns," which is sufficient to create an express predial servitude.[62]

The parties knew how to create an express servitude by adding the "successors and assigns" language but added that language only to the drainage clause, limiting the obligations in the crossings clause to "Texas & Pacific Railway Company" only. As the district court reasoned:

> If the parties intended all of the obligations to be
> predial in nature, they could have easily applied the
> successors and assigns language to the entire
> sentence. They did not. Instead, they specifically made
> one obligation (drainage) binding on successors and
> assigns, and did not impose that requirement on two
> other obligations (fencing and crossings). The most
> reasonable       interpretation       in      accordance       with

---

[61] *Franks*, 972 So. 2d at 900 (citing LA. CIV. CODE arts. 730 and 2050, which are the current equivalents of RCC arts. 753, 1952, and 1955); *see also* RCC art. 1951.

[62] *See Burgas*, 174 La. at 591 (noting that language in a deed granting use of a driveway to "the purchaser, its successors and assigns" would have created a predial servitude).

19

Louisiana law is that the obligations are to be treated differently.[63]

\* \* \*

The most faithful application of these [interpretation] principles to the language of the 1923 deed, as a whole, results in a determination that the crossings clause did not give rise to a predial servitude. This court should not, ninety years after the formation of the contract, interfere with the unambiguous language and attempt to substitute its judgment about what the parties meant or intended.[64]

We agree. Although Franks puts forward a number of arguments on appeal, none of them offers a convincing explanation for why the parties included the "successors and assigns" language in the drainage clause but not the crossings clause, if they intended both clauses to establish predial servitudes. Nor has Franks pointed to any *material* difference between the RCC provisions applicable in 1923 versus the Civil Code provisions applicable today and on which the district court relied. Indeed, as the parallel citations in this opinion show, virtually every relevant RCC article has a modern equivalent in the Civil Code, and the cases cited by the district court and herein do not depend on any of amendments for their reasoning or results.

In short, under the law applicable to the interpretation of the 1923 deed, we conclude that the contract is unambiguous. It does not establish a predial servitude with respect to Texas & Pacific Railway Company's obligation to provide three crossings across what was then its property. Rather, it is merely

---

[63] *Franks*, 972 So. 2d at 899 (footnote omitted).
[64] *Id*. at 900.

No. 13-30990

a personal obligation which does not bind Texas & Pacific Railway Company's successors-in-interest.

## CONCLUSION

For the reasons set out above, we AFFIRM.

No. 13-30990

JAMES L. DENNIS, Circuit Judge, dissenting:

At issue in this case is whether the owners of the Levy family plantation in Caddo Parish, Louisiana, who in 1923 deeded a strip of land bisecting the plantation to the Texas and Pacific Railway Company for railroad use, reserved a predial servitude of passage across the railroad's strip of land for the benefit of the plantation. The 1923 deed, in pertinent part, provides:

> It is understood and agreed that the said Texas & Pacific Railway Company shall fence said strip of ground and shall maintain said fence at its own expense and shall provide three crossings across said strip at the points indicated on said Blue Print hereto attached and made part hereof, and the said Texas and Pacific Railway hereby binds itself, its successors and assigns, to furnish proper drainage out-lets across the land hereinabove conveyed.

The parties agree that the provision requiring the railroad to "provide three crossings across said strip" created a servitude of passage. (A servitude is a "charge laid on an estate." Art. 647.)[1] The parties dispute, however, whether the deed created a personal servitude (that is, a right of passage benefitting specific persons—here, the Levy family—and terminating with the lives of those persons) or a predial servitude (that is, a right of passage benefitting an estate—here, the Levy plantation—whoever may come to own it). The majority, however, rejects both positions in favor of a third option the parties did not raise: that the deed did not impose *any* charge upon an estate, but only imposed a *personal obligation* on the part of the Texas and Pacific Railway Company (which no longer exists and has been replaced as owner of

---

[1] I agree with the majority that the 1870 Revised Civil Code of Louisiana, which was in effect in 1923, governs this case rather than the modern version. Hereinafter, unless specified otherwise, all citations to codal provisions refer to the 1870 code.

No. 13-30990

the railroad strip by the appellant, the Union Pacific Railroad Company). For the reasons that follow, I respectfully dissent.

It should be obvious that, when the Levy family sold a strip of land to the Texas and Pacific Railway Company and included in the deed the reservation that the railroad "provide three crossings across" the purchased land at designated places, the parties intended to afford a *right to use* the crossings. There is no reasonable explanation why the Levy family would have reserved the right to crossings as a condition of the land sale if they would have been trespassers when stepping foot on the crossings. It is self-evident that the deed's provision of three crossings encompasses a right of passage across those crossings, and, under the Civil Code, "[t]he right of passage, or of way, *is a servitude*." Art. 722 (emphasis added); *see also* Art. 721 (stating that the right of passage is one of the "principal rural servitudes"). Thus, we must start from the premise that, unless shown otherwise, the parties intended to create what the Civil Code provides: a servitude. The question presented, as recognized and argued by the parties, is whether they intended for the servitude of passage to be predial or personal.[2]

The deed does not say which sort of servitude was intended and, therefore, "the question whether the parties intended to create a predial

---

[2] Theoretically, the parties *could have* created only a purely personal right of passage for the members of the Levy family and a corresponding purely personal obligation by the Texas and Pacific Railway Company to allow such passage. *See* Art. 1764 ("All things that are not forbidden by law, may legally become the subject of, or the motive for contracts."); Art. 1885 ("All things, in the most extensive sense of the expression, corporeal or incorporeal, movable or immovable, to which rights can legally be acquired, may become the object of contracts."). The question, however, is whether there is any valid reason to think that the parties did not intend to create either a personal or predial servitude of passage. For the reasons explained *infra*, I do not think there is.

23

servitude or another right is to be made in accordance with articles [755] through [757] of the Civil Code." 4 A. N. Yiannopoulos, Louisiana Civil Law Treatise: Predial Servitudes, § 6:28 (4th ed.). Article 755 instructs that the question turns on "whether the right granted be of real advantage to the estate, or merely of personal convenience to the owner." The next two articles elaborate. Article 756, the most critical article for our purposes, provides:

> If the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled.

> Thus, for example, if the owner of a house contiguous to lands bordering on the high road, should stipulate for the right of passing through lands, without it being expressed that the passage is for the use of his house, it would be not the less a real servitude, for it is evident that the passage is of real utility to the house.

Article 757 provides that, "[i]f, on the other hand, the concession from its nature is a matter of mere personal convenience, it is considered personal, and can not be made real but by express declaration of the parties." It gives as an example "the right of walking and gathering fruits and flowers [in] a garden or park." Art. 757.

Here, there can be little doubt that the railroad crossings "assure a real advantage to an estate" (article 756) rather than provide a "mere personal convenience" to the original 1923 owners (article 757).

First, the benefit to the plantation estate is clear. Generally, plantation owners want access to their plantations, and more convenient means of access are preferred over less convenient alternatives. The railroad crossings here allow the owner of a plantation that has been divided by the railroad's strip to

conveniently cross from one section of the estate to the other. Absent the crossings, a less convenient, circuitous path would be required. The crossings are a plain advantage. Moreover, without the railroad crossings, the land that has been divided by an intersecting railroad is rendered less accessible, and its value is consequently diminished. Put another way, the crossings served to increase and/or maintain the value of the Levy family's plantation. *See Burgas v. Stoutz*, 141 So. 67, 69 (1932) (holding that a servitude of passage was predial rather than personal because, *inter alia*, it had the effect of "making the property more desirable and valuable").[3]

Second, it is clear that the benefit provided is *to the estate* itself rather than to an individual. *See State v. Cefalu*, 288 So. 2d 332, 338 (La. 1974) ("An examination of the grant reveals that it meets the basic requirement of predial servitudes—it is clearly of benefit to a dominant estate, namely the Cefalu tracts. The effect of the grant was to guarantee the Cefalu tracts direct access to each other. As a result it is clear that the Cefalu tracts were benefited."); *Plaisance v. Gros*, 378 So. 2d 178, 179 (La. Ct. App. 1979) (holding that the right of way contained in a 1906 deed was a predial servitude because it conferred "a real advantage to the then Dugas estate and not merely a personal convenience to the owner"). In fact, it is difficult to imagine a more plain

---

[3] At oral argument, the Union Pacific Railroad Company contended that we could not infer a benefit to the estate in the absence of specific supporting evidence. That argument is not persuasive. The benefit that adheres to a landowner when he is afforded convenient access from one part of his land to another is the sort of common knowledge of which we can infer. *See, e.g.*, *McGuffy v. Weil*, 120 So. 2d 358, 362 (La. Ct. App. 1960) ("That the erection and operation of commercial establishments, not only adjacent to residential property but in the immediate vicinity thereof, sometimes adversely affect the use and enjoyment of one's home is a matter of common knowledge."); *State v. Cefalu*, 288 So. 2d 332, 338 (La. 1974) (finding a benefit to an estate based on "[a]n examination of the grant").

benefit to an estate bisected by a railroad than passage over crossings affording the tracts "direct access to each other." *See Cefalu*, 288 So. 2d at 338. In *Taylor v. New Orleans Terminal Co.*, 52 So. 562 (La. 1910), for example, the Louisiana Supreme Court had little difficulty concluding that a railroad's contract to provide crossings afforded a predial, not personal, servitude: "The right followed the property and was not personal to the owner. The original owner acquired the right as a servitude for the benefit of the estate and not for his own benefit." *Id*. at 564.

Because it is clear that the railroad crossings provide a benefit to the estate, "it is to be presumed" under article 756 that they constitute a predial servitude. Thus, the question becomes, are there sufficient indicia in the record to rebut the predial presumption and rather find, as the Union Pacific Railroad Company argues, that the parties intended a personal servitude or, as the majority concludes, that the parties intended only a personal obligation?

Case law from Louisiana courts suggests that less-than-clear indications that a servitude may be personal rather than predial do not suffice to rebut the predial presumption under article 756. For example, in *Ogden v. Bankston*, 398 So. 2d 1037 (La. 1981), at issue was, as here, a 1923 property transfer. *Id*. at 1040. There, the terms of the act of sale provided a servitude of passage "to the vendor." *Id*. That the right of passage was granted, under the text of the document, "to the vendor" rather than to the estate might tend to suggest, of course, that the parties intended to create a personal right, that is, a personal servitude, for the vendor. However, the Louisiana Supreme Court, citing article 756, explained that such suggestion was insufficient to overcome the predial presumption: "Although the language creating the servitude in the 1923 act of sale recites that the passageway was granted 'to the vendor,' it is

26

evident that the right of passage was a real benefit to the estate itself.  For this reason, the servitude must be construed as a real right, not one which was personal to the grantee." *Id.* at 1041.  In addition to *Ogden*, other similar cases include *Whitney National Bank of New Orleans v. Poydras Center Associates*, 487 So. 2d 120, 123 (La. Ct. App. 1986) ("It matters not that the language of the Act was couched in personal terms, for the right created was a real advantage to the dominant estate . . . ."), and *McLure v. Alexandria Golf and Country Club, Inc.*, 344 So. 2d 1080, 1089 (La. Ct. App. 1977) ("[D]efendant[] argu[es] that the servitude did not outlive Kaiser because it was given to 'vendor' and not to 'vendor, his heirs and assigns.'  It has been specifically held that the addition of such language is not necessary for property rights in the nature of a servitude to pass to one's heirs.").

Here, there is a persuasive reason to find that the parties intended for the railroad crossings to be a predial servitude rather than, as the Union Pacific Railroad Company argues, a personal one.  The 1923 deed states in its opening clause:

> This instrument made and executed by and between Louis Levy, resident of said parish and state [Caddo Parish, Louisiana], George W. Levy, Miss Julia Levy, Miss Fannie Levy, and Miss Carolina Levy, represented herein by Louis Levy, her agent and attorney in fact, *residents of the City of New York, and State of New York*; Aaron Levy, a resident of the Parish of Caddo and State of Louisiana, and Mrs. Annie Levy Dreyfus, wife of Leon Dreyfus, *resident of the City of London, in the Kingdom of Great Britain*, represented herein by Louis Levy, her agent and attorney in fact, parties of the first part, and the Texas & Pacific Railway Company, a corporation organized under the laws of the United States of America, whereof J. L.

No. 13-30990

Lancaster and C. L. Wallace are Receivers, party of the
second part.

(Emphasis added.)  On one side of the 1923 transaction was the railway,
and on the other side were a number of people, at least some of whom,
importantly, resided outside Louisiana, in New York City and London.  If the
appellant was correct that the parties to this transaction intended for the
railroad crossings to be a *personal* servitude, it would mean that the parties
intended for the railroad crossings to benefit persons residing a world away.  It
is fantastical to presume, without evidence or expression, that persons residing
in New York City and London had reserved the right of passage in Caddo
Parish, Louisiana, as a matter of *personal* convenience similar to, e.g., the right
of gathering fruits and flowers in a garden.  *See* Art. 757.  (Contrast, for
example, *Deshotels v. Fruge*, 364 So. 2d 258, 260-61 (La. Ct. App. 1978),
wherein the court found that a servitude was personal based on actual
testimony about the beneficiary's personal reasons for desiring the servitude.)
Based on the record in this case, the far more evident answer is that these
persons in New York and London "acquired the right as a servitude for the
benefit of the estate and not for [their] own benefit."  *See Taylor*, 52 So. at 425
(holding that railroad crossings were a predial servitude); *cf. Gillis v. Nelson*,
1861 WL 3840 (La. 1861) (stating, with respect to an irrigation servitude, that
"the contract does not appear to us to be personal, for its object could only be
for the advantage of the respective tracts of land").

To reach its contrary conclusion, the majority points to that part of the
1923 deed which states that "the said Texas and Pacific Railway hereby binds
itself, *its successors and assigns*, to furnish proper drainage out-lets across the
land hereinabove conveyed."  (Emphasis added.)  The majority explains:

28

No. 13-30990

> The problem for Franks is that Franks is trying to establish a predial servitude by presumption because the crossings clause does not expressly create a predial servitude, but the parties to the 1923 deed showed that they knew how to establish a predial servitude *expressly* in the drainage clause—not just in part of the same deed but in the very same sentence. Specifically, whereas the crossings clause binds only Texas & Pacific Railway Company to maintain fences and provide crossings (which does not necessarily establish a predial servitude), the drainage clause binds not only Texas & Pacific Railway Company but "itself, its successors and assigns," which is sufficient to create an express predial servitude.

*Ante*, at 19.

Respectfully, I disagree that the "successors and assigns" language relating to the railroad's drainage obligations rebuts the predial presumption as to the right of passage. The drainage obligations are separate and apart—distinct—from the right of passage across the railroad crossings, and the railroad's agreement to bind itself and "its successors and assigns" to furnish drainage outlets across the land conveyed to it does not in any way add to or detract from the predial servitude of passage granted for the benefit of the Levy estate. Whether it was unusual for the railroad to bind itself, "its successors and assigns," in its obligation, or why it did so, is not a material issue in this case, but a matter that could vary widely depending on the company, the landowners, the terrain, and the particular circumstances involved. Nothing in the Civil Code, other legislation, or custom prevented the landowners from obtaining *both* a predial right of passage in favor their estate across the railroad's estate and the railroad's obligation, binding on its "successors and

29

assigns," to "furnish proper drainage out-lets across the land hereinabove conveyed."

The majority asks the wrong question: why did the parties "include the 'successors and assigns' language in the drainage clause"? *See ante*, at 20. I see no reason for the plaintiffs to be required to explicate the drainage clause's meaning. The better question is, did the parties intend to create a predial servitude of passage across the railroad crossings even though they did not include "successors and assigns" language in *that* provision of the deed? For the reasons explained, the law gave them no reason to think that the absence of "successors and assigns" language indicated neither a predial or personal servitude but rather a personal obligation. The right of passage "*is a servitude,*" the Code says. Art. 722. In fact, the Code describes the right of passage as one of the "*principal* rural servitudes." Art. 721 (emphasis added). And the Louisiana courts have evinced no hesitation to construe rights of passage, including those over railroad crossings, to be predial servitudes. *See, e.g.*, *Taylor*, 52 So. at 564. It was in the context of the Civil Code's articles on servitudes that the parties drafted the deed, and, when considered in that light, the addition of "successors and assigns" language with respect to the railroad crossings was not necessary. It was, rather, a reasonable omission. I suspect that, had the Levy family any way of knowing how this court would construe their deed nearly a century after it was written, they would be surprised to learn that, when they required railroad crossings as a condition for the sale of their land, they did not obtain a property right at all, but only a contractual right with one single railroad, meaningless against any other railroad that may succeed it.

No. 13-30990

In sum, under article 756, which provides the controlling rule of law in this case, this court must presume that the railroad crossings afforded in the 1923 deed constitute a predial servitude, and I do not believe that there is a reasonable basis to find that the presumption has been rebutted. On the contrary, there are persuasive reasons to conclude that the parties indeed intended to create a predial servitude for the benefit of the Levy family plantation. Therefore, I respectfully dissent from the majority's conclusion, argued for by none of the parties, that, as a matter of law, the deed created nothing more than a purely personal right of passage for the members of the Levy family as individuals and a personal obligation on the part of the Texas and Pacific Railway Company to allow such passage, and not a predial right for the benefit of the Levy plantation estate.